Laurel I. Handley, Esq. (SBN 9576)
Krista J. Nielson, Esq. (SBN 10698)
PITE DUNCAN, LLP
520 South 4th Street, Suite 360
Las Vegas, Nevada 89101
Tel: (858) 750-7600 Fax: (702) 685-6342
*lhandley@piteduncan.com; knielson@piteduncan.com*
*Attorneys for Federal National Mortgage Association and Clear Recon Corp.*

Leslie Bryan Hart, Esq. (SBN 4932)
John D. Tennert, Esq. (SBN 11728)
FENNEMORE CRAIG, P.C.
300 E. Second St., Suite 1510
Reno, Nevada 89501
Tel: 775-788-2228 Fax: 775-788-2229
*lhart@fclaw.com; jtennert@fclaw.com*

(Admitted *Pro Hac Vice*)
Asim Varma, Esq.
Howard N. Cayne, Esq.
Michael A.F. Johnson, Esq.
ARNOLD & PORTER LLP
555 12th Street NW
Washington, DC 20004
Tel: (202) 942-5000 Fax: (202) 942-5999
*Asim.Varma@aporter.com; Howard.Cayne@aporter.com;*
*Michael.Johnson@aporter.com*
*Attorneys for Federal Housing Finance Agency*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

SATICOY BAY, LLC SERIES 1702 EMPIRE MINE,

Plaintiff,

vs.

FEDERAL NATIONAL MORTGAGE ASSOCIATION; and CLEAR RECON CORP.,

Defendants.

and

FEDERAL HOUSING FINANCE AGENCY, as Conservator of the Federal National Mortgage Association,

Intervenor.

CASE NO. 2:14-cv-01975-GMN-NJK

**REPLY BRIEF OF FANNIE MAE AND FHFA IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Counterclaimant,

and

FEDERAL HOUSING FINANCE AGENCY, as Conservator of the Federal National Mortgage Association,

Intervenor,

vs.

SATICOY BAY, LLC SERIES 1702 EMPIRE MINE; VILLAGE 2, THE BLUFFS; and NEVADA ASSOCIATION SERVICES,

Counter-defendants.

## I. INTRODUCTION

Federal law provides that while Fannie Mae is in FHFA conservatorship, none of its property "shall be subject to … foreclosure[] … without the consent of [FHFA]." 12 U.S.C. § 4617(j)(3) (the "Federal Foreclosure Bar"). Fannie Mae's property includes its interests in the real property securing its loans. A Nevada statute grants homeowners associations ("HOAs") a "superlien" for uncollected dues owed to the HOA. *See* Nev. Rev. Stat. § 116.3116(2) (the "State Foreclosure Statute"). The State Foreclosure Statute grants HOA superliens priority above all other private liens and authorizes HOA superlien holders to foreclose all junior interests, including pre-existing first deeds of trust.

Saticoy Bay purchased the Property at issue here at an HOA foreclosure sale ("HOA Sale"), and seeks a declaration in this quiet title action that the HOA Sale conducted pursuant to the State Foreclosure Statute extinguished Fannie Mae's interest in the Property, which, at the time of the Sale, included ownership of both the loan and the deed of trust. FHFA has not consented to such extinguishment through foreclosure of its interest in the Property or otherwise. The State Foreclosure Statute upon which Saticoy Bay predicates its quiet title claim conflicts directly with the Federal Foreclosure Bar, which expressly places Fannie Mae's property off-limits to nonconsensual foreclosure. Under the Supremacy Clause of the U.S. Constitution, the State

Foreclosure Statute must yield, and the HOA Sale therefore did not extinguish Fannie Mae's interest in the Property.

In response, Saticoy Bay argues that the Court should read into the Federal Foreclosure Bar an unstated term, supported by neither the plain text nor context of the statute, limiting the Bar's application to foreclosures involving tax liens. Application of the plain language of the Federal Foreclosure Bar requires that the Court reject this contention and each of Saticoy Bay's other arguments.

## II. LEGAL ARGUMENT

### A. Section 4617(j)(3) Preempts Contrary State Law

The Federal Foreclosure Bar supersedes the State Foreclosure Statute to the extent it would otherwise allow Saticoy Bay to effect an involuntary foreclosure of Fannie Mae's interest in the Property. Saticoy Bay presents a detailed explication of the mechanics of the Nevada State Foreclosure Statute. But there is no dispute about the state statute's operation—the Nevada Supreme Court has ruled that it authorizes HOA superlien holders to foreclose all junior interests, including pre-existing first deeds of trust.[1] The issue before this Court is whether the Federal Foreclosure Bar overrides the State Foreclosure Statute in the circumstance presented here. It does.

A federal statute expressly preempts contrary law when it "explicitly manifests Congress's intent to displace state law." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013). This is the case here: the text of the statute declares that "[n]o property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale." 12 U.S.C. § 4617(j)(3). The Federal Foreclosure Bar automatically bars any nonconsensual limitation or extinguishment through foreclosure of any interest in property held by Fannie Mae while in conservatorship; it

[1] Though Fannie Mae and FHFA do not dispute the Nevada Supreme Court's interpretation of the State Foreclosure Statute, Fannie Mae reserves the right to later argue that the HOA Sale at issue here did not comply with the requirements of that statute. *See* MSJ at 8 n.2.

therefore preempts the State Foreclosure Statute to the extent that the state statute otherwise would permit any such nonconsensual limitation or extinguishment.

Even were Section 4617(j)(3) not worded in such express terms, it nevertheless would preempt the State Foreclosure Statute because "'state law is naturally preempted to the extent of any conflict with a federal statute.'" *Valle del Sol*, 732 F.3d at 1023 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)). "[U]nder the Supremacy Clause…any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgm't Ass'n*, 505 U.S. 88, 108 (1992) (internal quotations and citations omitted). Therefore, conflict preemption occurs "where it is impossible for a private party to comply with both state and federal law" or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Valle del Sol*, 732 F.3d at 1023 (internal quotations and citations omitted). In short, "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).[2]

Applying this governing rule, a federal court evaluating another provision of HERA held that it preempted certain state laws because "[e]xposure to state law claims would undermine the FHFA's ability to establish uniform and consistent standards for the regulated entities, and thwart its mandate to assure their safe and sound operation. If [p]laintiffs' state claims were not preempted, liability based on these claims would create obstacles to the accomplishment of the policy goals set forth in [HERA]." *California ex rel. Harris v. FHFA*, No. 10-cv-03084, 2011 WL 3794942, at *16 (N.D. Cal. Aug. 26, 2011). Courts applying the companion statute governing FDIC receiverships have similarly held that it supersedes otherwise-applicable state law. *See, e.g.*, *FDIC v. Lowery*, 12 F.3d 995 (10th Cir. 1993) (concluding that local taxing authorities could not

2 Relatedly, this Court has recognized that federal law prevents an HOA foreclosure sale from extinguishing a property interest in Nevada in cases relating to HUD-insured mortgages. *See Washington & Sandhill Homeowner's Ass'n v. Bank of Am.*, No. 2:13-cv-01845, 2014 WL 4798565 (D. Nev. Sept. 25, 2014) (Navarro, C.J.); *Collegium Fund, LLC v. Wells Fargo Bank, N.A.*, No. 2:13-cv-01550, 2014 WL 4635607 (D. Nev. Sept. 15, 2014) (Navarro, C.J.).

sell property owned by FDIC to satisfy tax liens without FDIC's consent and noting that "[t]he text of section 1825(b)(2) is unequivocal and suggests no implied exception"); *GWN Petroleum Corp. v. Ok-Tex. Oil & Gas, Inc.*, 998 F.2d 853 (10th Cir. 1993) (concluding that a private judgment holder's attempt to garnish proceeds from the sale of oil and gas paid to the FDIC was barred by Section 1825(b)(2)).[3]

Similarly, Congress's clear and manifest purpose in enacting Section 4617(j)(3) was to protect the nationwide operations of the Enterprises in conservatorship from actions, such as the HOA Sale, that otherwise would deprive them of their interests in property. In so doing, Congress ensured that the Enterprises would not be subject to an array of conflicting state laws, such as those relied upon by Saticoy Bay, which could undermine the Conservator's efforts to restore and assure the safety and soundness of their business operations.[4] Accordingly, any state law that would permit the transfer to Saticoy Bay of free and clear title over the Property by authorizing the HOA Sale to effect the nonconsensual extinguishment of Fannie Mae's interest in the Property is preempted.

**B. Section 4617(j)(3) Protects Fannie Mae's Interest in the Property**

Saticoy Bay does not seriously contest the preemption principles underlying FHFA's position, instead offering three arguments that the Federal Foreclosure Bar does not apply in the first place. First, Saticoy Bay claims that the Bar only applies to foreclosures involving tax liens. Second, Saticoy Bay asserts that the Bar applies only to receiverships, not conservatorships. Third, Saticoy Bay contends that the Bar protects only FHFA, not the entities in FHFA conservatorship or receivership. None of these arguments can survive the express mandatory language of the Federal Foreclosure Bar, and all previously have been rejected by courts in analogous circumstances.

---

[3] As noted in Fannie Mae and FHFA's opening brief, courts have frequently turned to precedent interpreting12 U.S.C. § 1825(b)(2) to analyze HERA's provisions. *See* MSJ at 6 n.1.

[4] The broad protection provided by Section 4617(j)(3) is reinforced by other sections of HERA that protect the conservatorship from being subject to the supervision of state authorities or restrained by court-ordered injunction. *See, e.g.*, 12 U.S.C. §§ 4617(a)(7), (f).

**1. Application of Section 4617(j)(3) Is Not Limited to the Tax Context**

**a) The Text and Structure of HERA**

Saticoy Bay's primary argument is that the Federal Foreclosure Bar applies to foreclosures involving tax liens only, not foreclosures involving other types of liens. Nothing in 12 U.S.C. § 4617(j) supports that contention. To the contrary, the plain terms of the statute refute it.

Section 4617(j) bears the general heading "[o]ther Agency exemptions." This provision contains four subsections, the first of which establishes the applicability of the following three, providing that each "shall apply with respect to the Agency in any case in which the Agency is acting as a conservator or a receiver." 12 U.S.C. § 4617(j)(1). Thus, the first subsection neither states nor implies any general or overriding limitation of the remaining subsections to the tax context. Each of the three subsections that follow confers a different protection, as indicated by its title: Subsection 4617(j)(2) provides an exemption from "Taxation"; Subsection 4617(j)(3) grants the "Property Protection" at issue here; and Subsection 4617(j)(4) bars the assessment and collection of "Penalties and fines."

Unlike the subsection that precedes it, the title of the subsection containing the Federal Foreclosure Bar—"Property Protection"—in no way suggests that the protection afforded is limited to the tax context. Nor does the text itself imply that it is limited to the tax context: Section 4617(j)(3) states that "no property…shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property." The statutory text does not even mention the word "tax," "taxation," or any analog. By contrast, when Congress intended to limit a statutory protection to the tax context, it did so expressly—the preceding subsection is not only titled "Taxation", but also expressly confers in its text an "exempt[ion] from all *taxation* imposed by any State, county, municipality, or local taxing authority." 12 U.S.C. § 4617(j)(2) (emphasis added).

Section 4617(j)(4), which confers immunity from penalties and fines, further confirms that Section 4617(j) as whole is *not* limited to the tax context. The paragraph immunizes conservatorships from "penalties or fines, *including* those arising from the failure of any person to

pay [certain kinds of] tax or … fees when due." 12 U.S.C. § 4617(j)(4) (emphasis added). That Section 4617(j)(4) references taxes only as an *example* in an "including" clause confirms that the more general operative words of the provision are not limited to the tax context. "Including" clauses such as Section 4617(j)(4) are universally recognized as "illustrative and not limitative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994); *see Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2170 (2012). Indeed, a court evaluating the identical "including" clause in the FDIC's penalty bar held that "the referenced taxes and fees present *a nonexhaustive list of examples* of the types of penalties or fines for which FDIC–Receiver shall not be liable." *Alexander v. Wash. Mut., Inc.*, Civ. A. No. 07-4426, 2011 WL 2559641, at *2 (E.D. Pa. June 28, 2011) (analyzing 12 U.S.C. §1825(b)(3)) (emphasis added).

Thus, the structure and context of Section 4617(j)(3) confirm the plain-text reading of the provision, and do not support Saticoy Bay's attempt to sharply curtail the operation of this provision pursuant to a limitation not imposed by Congress.

**b) *McFarland* Was Incorrectly Decided**

Saticoy Bay relies heavily on the Fifth Circuit's ruling in *FDIC v. McFarland* that elements of the structure and text of the FDIC's property protection clause, 12 U.S.C. § 1825(b)(2), restricted the protection afforded by that section to the tax-lien context. *See* 243 F.3d 876, 886 (5th Cir. 2001). FHFA and Fannie Mae respectfully submit that the Fifth Circuit's analysis, which is obviously not controlling in this Court, was incorrect. As Saticoy Bay acknowledges, the Tenth Circuit applied the same Section 1825(b)(2) to bar a *private judgment creditor* from attempting to garnish proceeds from the sale of oil and gas paid to the FDIC. *GWN Petroleum*, 998 F.2d at 855-56. The contention that Congress limited Section 1825(b)(2) to the tax-lien context cannot be squared with the Tenth Circuit's holding in *GWN Petroleum*—indeed, the *McFarland* panel acknowledged that its ruling cannot be reconciled with the Tenth Circuit's contrary decision in *GWN Petroleum*. 243 F.3d at 886 n.40.[5] Nor is the Tenth Circuit the only court to apply Section

5 Saticoy Bay's suggestion that *GWN Petroleum* is distinguishable because it relied upon a separate statute, 12 U.S.C. § 1821(d)(13)(C), is incorrect. First, it is clear from that decision that

1825(b)(2) to bar the actions of private entities. In *Trustees of MacIntosh Condominium Ass'n v. FDIC*, the court held that the attempt of a private condo association (much like the HOA here) to obtain a priority lien for unpaid condo fees, after the FDIC-receiver had foreclosed on and retained possession of the condo, violated § 1825(b)(2). 908 F. Supp. 58, 65-66 (D. Mass. 1995); *see also Midlantic Nat'l Bank/North v. Fed. Reserve Bank*, 814 F. Supp. 1195, 1197 (S.D.N.Y. 1993) (private judgment creditor "could not take action against [the failed bank's] assets after the FDIC was appointed receiver").

Indeed, the *only* decision to limit the protection for FDIC receiverships under Section 1825(b)(2) to the tax-lien context is *McFarland*. While the other cases that Saticoy Bay cites did apply Section 1825(b)(2) to bar tax liens or their enforcement, none held, or even had occasion to consider whether, the protections of that statute were *limited* to that context. For example, in *Cambridge Capital Corp. v. Halcon Enterprises, Inc.*, 842 F. Supp. 499 (S.D. Fla. 1993), which Saticoy Bay acknowledges "included a detailed analysis of the legislative history" of Section 1825(b)(2), the court ruled that Section 1825(b)(2) provided property protection without specifying that it was limited to the tax-lien context; in fact, the court cited multiple times to *GWN Petroleum*, a case that involved no tax lien and applied Section 1825(b)(2) to a garnishment by a private entity. *See id.* at 502, 505.

The conclusion that *McFarland* was incorrectly decided is also confirmed by decisions analyzing 12 U.S.C. § 1825(b)(3), the subsection immediately following the FDIC property protection provision, which bars penalties from being imposed on FDIC receiverships in non-tax contexts. For instance, in a case predating *McFarland* by several years, the Ninth Circuit drew a conclusion from the statutory history contrary to that drawn by *McFarland*, noting that "under a heading *formerly referring to 'Taxation' but later broadened by deletion*, § 1825(b)(3) states that

---

the Tenth Circuit found that either statute was sufficient to sustain its holding, noting that § 1821(d)(13)(C) "would *also* appear to place a limitation on the power of this court to grant relief." 998 F.2d at 856. Second, as discussed *infra*, the text of that section reveals that it applies in a more narrow context of court-judgment attachments and executions, which was relevant in *GWN Petroleum* but not in this case.

FDIC 'shall not be liable for any amounts in the nature of penalties or fines'" and holding that the immunity applied to "late payment penalties" unrelated to taxation. *Monrad v. FDIC*, 62 F.3d 1169, 1175 (9th Cir. 1995) (emphasis added).[6] *McFarland* conspicuously ignores *Monrad*'s incisive point that the heading "Other Exemptions" (which omits the word "taxation") was added to the operative provision, Section 1825(b), long before the events at issue in *McFarland*.[7]

Similarly, the Eastern District of Pennsylvania specifically rejected the argument that Section 1825(b)(3) is limited to the tax context, holding that the provision barred private plaintiffs seeking penalties pursuant to their RESPA claims. *Alexander*, 2011 WL 2559641, at *3-4. Saticoy Bay's argument and the ruling in *McFarland* cannot be reconciled with *Monrad*, *Alexander*, and the many cases holding claims of *private parties* to be barred by Section 1825(b)(3) (such as claims for punitive damages). *E.g.*, *Nials v. Bank of Am.*, No. 13 Civ. 5720, 2014 WL 1174504, at *7 (S.D.N.Y. Mar. 21, 2014); *Horn v. FDIC*, Civ. A. No. ELH-11-2127, 2011 WL 6132309, at *1 (D. Md. Dec. 8, 2011); *Poku v. FDIC*, Civ. A. No. RDB-08-1198, 2011 WL 1599269, at *4 (D. Md. Apr. 27, 2011); *King v. Long Beach Mortg. Co.*, 672 F. Supp. 2d 238, 246 (D. Mass. 2009); *Deerborne Cottages, LLC v. First Bank*, No. 1:11-CV-178, 2012 WL 1835240, at *8 (W.D.N.C. Apr. 9, 2012), *report and recommendation adopted*, 2012 WL 1836093 (W.D.N.C. May 21, 2012); *Summers v. FDIC*, 592 F. Supp. 1240, 1243 (W.D. Okla. 1984).

**c) *McFarland* Does Not Apply**

In any event, *McFarland* provides no basis for limiting the protections of Section 4617(j)(3) to tax liens because the *McFarland* ruling was based on elements not present in Section 4617(j)(3). First, *McFarland* put great weight on the fact that, at the time, the title of 12 U.S.C. § 1825 was "Exemption from taxation; limitations on borrowing." *See McFarland*, 243 F.3d at

---

6 *Monrad* applies § 1825(b)(3) and *McFarland* applies § 1825(b)(2), neither of which has a separate heading or title.

7 The holding of *Monrad* is even more persuasive today, as Section 1825 has since been amended and its overall title no longer refers to "taxation." *See* 12 U.S.C. § 1825 (Supp I 2014). This removes one of the bases for *McFarland*'s holding that Section 1825(b) should be limited to the tax-lien context.

886. The analogous section title in HERA, in contrast, is "Other Agency Exemptions." 12 U.S.C. § 4617(j). This makes no reference to tax or taxation.

Second, *McFarland* relies heavily on Section 1825's structure and history. The court highlighted the fact that, prior to 1989 when it was amended as part of FIRREA, Section 1825 consisted of a single paragraph, without subsections, that exempted the FDIC from taxes only when acting in its corporate capacity. *McFarland*, 243 F.3d at 886. FIRREA substantially restructured and revised Section 1825 to include subsections, the first of which is subsection 1825(a), entitled "General rule," which continues the longstanding tax exemption applicable to FDIC when acting in its corporate capacity. *See id.* As amended by FIRREA, Section 1825 contains a new subsection (b) entitled "Other exemptions." On the basis of this legislative history, *McFarland* concluded that Section 1825 as reenacted by FIRREA merely extended the longstanding tax exemption applicable to the FDIC in its corporate capacity to bar tax liens against properties held by the FDIC as receiver. *See id.*

The statutory and historical rationale used by *McFarland* to interpret FIRREA simply is inapposite in the context of HERA's Federal Foreclosure Bar. Section 4617, in which that clause is found, did not exist before HERA. Unlike the *McFarland*-era version of the FDIC statute, neither the title of Section 4617(j) or the content of the introductory subsection 4617(j)(1) mentions or even references taxation. Section 4617(j) of HERA does not purport to establish a "General rule" that addresses only taxation. Its overall purpose—as evidenced both by its title, "Authority over critically undercapitalized regulated entities," and its content—is not to narrowly articulate tax exemptions, as the Fifth Circuit concluded was the case for the FDIC's statute, but rather to define the broad general powers and immunities of FHFA conservatorships and receiverships. *See Cnty. of Sonoma v. FHFA*, 710 F.3d 987, 989 (9th Cir. 2013) (holding that Section 4617 enumerates the "broad powers FHFA has as conservator" and noting that it also provides the conservatorship with broad immunities and exemptions); *Leon Cnty., Fla. v. FHFA*, 700 F.3d 1273, 1279 (11th Cir. 2012) (similar); *Nevada ex rel. Hager v. Countrywide Home Loans*

*Servicing, LP*, 812 F. Supp. 2d 1211, 1217 (D. Nev. 2011) (similar).[8] Put simply, *none* of the factors underlying *McFarland*'s ruling that the FDIC's property protection provision was limited to the tax context are present in Section 4617(j)(3). *See supra* at 5-7. *McFarland* is inapplicable here.

**2. Section 4617(j)(3) Applies to Conservatorships As Well As Receiverships**

At various points in its Opposition, Saticoy Bay appears to argue that only FHFA receiverships, not FHFA conservatorships, are entitled to the property protection of Section 4617(j)(3). *See* Opp. at 11-13. This misstates the statute and ignores that Congress, in enacting the FHFA property protection provision, expressly provided that the protection be applicable without regard to whether FHFA is acting as receiver or conservator—a departure from Section 1825(b)(2), which applies only to properties held by the FDIC as receiver. *Compare* 12 U.S.C. § 4617(j)(1) ("The provisions of this subsection shall apply with respect to the Agency in any case in which the Agency is acting as a conservator or a receiver.") *with* 12 U.S.C. § 1825(b) ("When acting as a receiver, the following provisions shall apply with respect to the Corporation."). Use of the phrase "conservator or receiver" in Section 4617(j)(1), the provision governing the "applicability" of the exemptions granted by Section 4617(j)'s substantive subsections, plainly reflects a congressional decision to ensure that the immunities provided by Section 4617(j)(3) are applicable to FHFA conservatorships. *See 1185 Ave. of Americas Assocs. v. RTC*, 22 F.3d 494, 497 (2d Cir. 1994) ("Congress [does] not use the phrase 'conservator *or* receiver' loosely.") (emphasis added). Thus, in enacting HERA, it is evident that Congress intended FHFA conservatorships and FDIC receiverships to be treated in the same fashion regarding the extinguishment of the conservator's or receiver's property interests without consent. *See Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1568 (Fed. Cir. 1995) ("Where Congress uses

---

[8] The broad protections of HERA complement the protections Congress granted the Enterprises in their federal statutory charters. As the Ninth Circuit recently acknowledged, Congress utilized its powers under the Commerce Clause and Necessary and Proper Clause to preempt state and local tax laws through those charters. *See City of Spokane v. Fed. Nat'l Mortg. Ass'n*, No. 13-35655, 2014 WL 7384311, at *3 (9th Cir. Dec. 30, 2014) (analyzing 12 U.S.C. §§ 1452(e) and 1723a(c)(2)).

the same form of statutory language in different statutes having the same general purpose, courts presume that Congress intended the same interpretation to apply in both instances."). Indeed, that Congress extended FHFA's property protection in Section 4617(j)(3) to its role as Conservator, rather than limiting that protection, as it did with respect to the FDIC, to when FHFA acts as a receiver, underscores the importance Congress placed on insulating FHFA from third-party interference when it acts as a conservator.

In support of its counter-textual argument, Saticoy Bay contends that the only property protection afforded by HERA is to entities in receivership pursuant to Section 12 U.S.C. § 4617(b)(11)(C), which provides that "[n]o attachment or execution may issue by any court upon assets in the possession of the receiver, or upon the charter, of a regulated entity for which the Agency has been appointed receiver." Saticoy Bay's discussion of this statute is a needless distraction; this section would be inapplicable in this case even if Fannie Mae were in receivership, as the scope of its prohibition, "attachments" or "execution[s]" by a court on "any asset," does not address the facts here, where Fannie Mae and FHFA challenge a nonjudicial foreclosure on their property interest. The only authority that Saticoy Bay cites to suggest that it should be applicable is *GWN Petroleum*, 998 F.2d 853, wherein the court cited both the FDIC's analogue to Section 4617(b)(11)(C) and Section 1825(b)(2), the analogue to Section 4617(j)(3). But the facts of *GWN Petroleum*, involving the claims of a private judgment creditor, made that statute a separate and independent basis for denying plaintiffs the relief they sought.

Finally, Saticoy Bay raises an argument that it is only in the receivership context, when the FHFA receivership is charged with "realiz[ing] upon the assets of [Fannie Mae]," that the property protections of Section 4617(j)(3) make sense. *See* Opp. at 13. But this argument ignores that Congress has already made the explicit determination that it intended the protections of Section 4617(j)(3) to apply both when FHFA acts as conservator and as receiver. *See* 12 U.S.C. § 4617(j)(1). Indeed, not consenting to third-parties' efforts to extinguish the property interests of the Enterprises in conservatorship is consonant with a core power of the conservator that Saticoy Bay itself highlights: to "preserve and conserve the assets" of the Enterprises. *See* Opp. at 13

(citing 12 U.S.C. § 4617(b)(2)(D)).[9] In support of this argument, Saticoy Bay also cites various sections of HERA that address the treatment of claims of creditors of the Enterprises at the time a receivership begins, and notes that similar provisions do not apply to creditors in the context of conservatorship. *See* Opp. at 13. The only way these statutes conceivably could be relevant would be if the HOA was a creditor of Fannie Mae prior to the conservatorship. It was not. Saticoy Bay fails to identify any debt Fannie Mae (as opposed to the borrower) owed to the HOA. Furthermore, the undisputed facts show that the first delinquency in HOA assessments was recorded in December 2011, more than three years *after* the conservatorship began in September 2008. Therefore, the statutes Saticoy Bay relies upon that concern the treatment of creditors whose claims *existed at the time the conservator was appointed*, *see* Opp. at 14 (citing 12 U.S.C. § 4617(b)(2)(H)), are irrelevant. In any event, Fannie Mae and FHFA do not contend that Section 4617(j)(3) prevented the HOA from foreclosing on its lien or otherwise collecting on its claim to the Property; it simply prevents the foreclosure from also extinguishing the interest that Fannie Mae had in the Property.

**3. The Protection of Section 4617(j)(3) Extends to Fannie Mae When It Is Under FHFA's Conservatorship**

Saticoy Bay's final argument is that Section 4617(j)(3) protects only FHFA itself, not Fannie Mae, even though Fannie Mae is in FHFA's conservatorship. *See* Opp. at 6, 12-13. This argument also conflicts with the plain text and structure of HERA. Section 4617 concerns FHFA's "[a]uthority over" Fannie Mae and Freddie Mac when they are "critically undercapitalized" and thus must be placed into conservatorship or receivership; it does not address the powers of FHFA as a regulatory agency.[10] Furthermore, the protections of Section 4617(j)(3) apply in "any case in which [FHFA] is acting as a conservator or a receiver." 12 U.S.C. § 4617(j)(1). In its capacity as Conservator, FHFA has succeeded by law to all of Fannie Mae's "rights, titles, powers, and

---

[9] *Cf. Cnty. of Sonoma*, 710 F.3d at 989 (FHFA's powers as conservator include the management of the mortgage assets of the Enterprises) (citing *Leon Cnty.*, 700 F.3d at 1279).

[10] In contrast, other sections of the U.S. Code speak to FHFA's responsibilities as regulator. *See, e.g.*, 12 U.S.C. §§ 4611-16.

privileges [and its] assets." *Id.* § 4617(b)(2)(A)(i). The property protection accorded by Section 4617(j)(3) would be meaningless if it did not extend to the entities in conservatorship. Hence, Saticoy Bay's interpretation would violate the canon that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted).

Indeed, courts uniformly have rejected any argument that the immunities provided by Section 4617(j) do not apply to Fannie Mae (or other entities) while in FHFA conservatorship. *See Nevada v. Countrywide Home Loans Servicing, LP*, 812 F. Supp. 2d 1211, 1218 (D. Nev. 2011) ("while under the conservatorship with the FHFA, Fannie Mae is statutorily exempt from taxes, penalties, and fines to the same extent that the FHFA is"); *FHFA v. City of Chicago*, 962 F. Supp. 2d 1044, 1064 (N.D. Ill. 2013) (argument is "meritless"). The courts have also rejected similar arguments in the context of FDIC receiverships. *See In re Cnty. of Orange*, 262 F.3d 1014, 1020 (9th Cir. 2001) ("We also note that subsection (b)(2) provides 'nor shall any involuntary lien attach to the property of the Corporation.' That language's plain meaning is that once the property belongs to the FDIC, that is, when the FDIC acts as receiver, no liens shall attach") (emphasis omitted) (quoting 12 U.S.C. § 1825(b)(2)); *Cnty. of Fairfax v. FDIC*, Civ. A. No. 92-0858, 1993 WL 62247, at *4 (D.D.C. Feb. 26, 1993) (rejecting contention that statutory penalty bar applicable to the FDIC as receiver, 12 U.S.C. § 1825(b)(3), only "exempts the FDIC *itself* from penalty assessment but not the [financial institution] for which the FDIC assumes receivership").

### C. Saticoy Bay Lacks Standing to Invoke Fannie Mae's Servicing Guidelines or Challenge the Assignment from Citibank to Fannie Mae

In a "supplemental" opposition brief filed after its Opposition, Saticoy Bay contends that "Fannie Mae's own guidelines were violated and Fannie Mae never should have taken the assignment of the subject trust deed." Supplemental Opposition to Fannie Mae and FHFA's Motion for Summary Judgment (Dkt. No. 55). Saticoy Bay identifies several announcements reminding loan servicers that Fannie Mae's Servicing Guide require them to advance up to six months of HOA fees for borrowers who are delinquent on payment. *Id*. at 2-3. Saticoy Bay,

however, fails to explain how a purported violation of Fannie Mae's Servicing Guidelines relates to Section 4617(j)(3) and Saticoy Bay's inability to extinguish Fannie Mae's interest in the Property.

In any event, the Servicing Guide is not law; rather, it is a set of contractual instructions that Fannie Mae issues to its loan servicers and expects them to follow when conducting business on its behalf. *Hinton v. Fed. Nat'l. Mortg. Ass'n*, 945 F. Supp. 1052, 1057-59 (S.D. Tex. 1996) *aff'd.*, 137 F.3d 1350 (5th Cir. 1998) (table).

Furthermore, "Plaintiff is not a third-party beneficiary of Fannie Mae's servicing guides and has no standing to enforce them." *Ishee v. Federal Nat'l Mortg. Ass'n*, Civ. A. No. 2:13-CV-234-KS-MTP, 2015 WL 518682, at *14 (S.D. Miss. Feb. 6, 2015). *See also, e.g.*, *McKenzie v. Wells Fargo Bank*, 931 F.Supp.2d 1028, 1044 (D. Haw. 2013) ("the federal courts have routinely concluded, to the extent that [Fannie Mae and Freddie Mac's] servicing guidelines can be read as creating enforceable contract duties, that borrowers are neither parties nor third-party beneficiaries entitled to enforce the [] servicing guidelines."); *Fellows v. CitiMortgage, Inc*., 710 F. Supp. 2d 385, 406 (S.D.N.Y. 2010) ("Other federal courts that have addressed this issue have uniformly rejected the notion that borrowers are third-party beneficiaries of servicing guides.") (internal quotation marks omitted); *Wood v. German*, 331 P.3d 859, 861 (Nev. 2014) (holding that under Nevada law "a nonparty to a contract has standing to enforce the contract only when the nonparty is an intended third-party beneficiary.").

Likewise, Saticoy Bay is neither a party to nor a third-party beneficiary of the deed of trust assigned to Fannie Mae. Therefore, Saticoy Bay lacks standing to challenge that assignment. *Burd v. JP Morgan Chase*, No. 2:13-cv-337, 2013 WL 1787192, at *4 (D. Nev. Apr. 25, 2013) (holding that plaintiff borrower lacked standing to challenge assignment of deed of trust).

**D. Saticoy Bay Fails to Identify Any Genuine Issues of Material Fact that Preclude Entry of Summary Judgment**

Saticoy Bay asserts that there is a disputed issue of fact regarding when Fannie Mae acquired an interest in the Property. Opp. at 14-15. Specifically, Saticoy Bay contends that the

June 6, 2014 assignment of the deed of trust from CitiMortgage, Inc. to Fannie Mae conflicts with Mr. Curcio's signed declaration stating that "Fannie Mae acquired ownership of a loan secured by [the Property] from PHH mortgage Corporation on or about October 28, 2004, and has owned it ever since." Opp. at 15. Saticoy Bay is simply mistaken.

As an initial matter, this purported factual dispute issue is immaterial. Saticoy Bay does not dispute that Fannie Mae recorded an assignment of the deed of trust on the Property on June 6, 2014, more than two months prior to the HOA Sale that sought to extinguish Fannie Mae's interest in the subject property. Thus, there is no dispute that Fannie Mae owned both the loan and deed of trust prior to the August 29, 2014 HOA Sale.[11]

In any event, Mr. Curcio's signed declaration is entirely consistent with the fact that the assignment of the deed of trust was recorded on June 6, 2014. When entering into a residential mortgage, a borrower executes two instruments: a promissory note (the "note") and a deed of trust. *Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 254 (Nev. 2012). "The note represents the right to the repayment of the debt, while the deed of trust represents the security interest in the property that is being used to secure the note." *Id.* (quotations and citations omitted). Here, Fannie Mae has owned the loan since October 28, 2004, and became the beneficiary of record on June 6, 2014. *See* Decl. of John Curcio ¶ 4; Req. for Judicial Notice, Ex. 5. As Mr. Curcio's stated in his Declaration, Fannie Mae acquired the note "on or about October 28, 2004 and has owned it ever since." Decl. of John Curcio ¶ 4. Therefore, there is no disputed issue of material fact regarding the information contained in Mr. Curcio's declaration.

Saticoy Bay's assertion that "Mr. Curcio is not competent to verify the accuracy of the information contained in Exhibit A to his declaration," Opp. at 15, is meritless. Mr. Curcio's sworn declaration states that he has "personal knowledge of and [is] competent to testify as to the matters stated herein by virtue of [his] position as Assistant Vice President for [Fannie Mae]" and

[11] The HOA Sale is the relevant date because Fannie Mae and FHFA argue that Section 4617(j)(3) prevents the HOA Sale from extinguishing Fannie Mae's interest in the Property, not that the HOA Sale could not have been conducted (so long as it conveyed the Property subject to Fannie Mae's enduring interest), nor that the HOA lien itself was void.

that he is "familiar with certain Fannie Mae systems that contain data regarding loans acquired and owned by Fannie Mae." Decl. of John Curcio ¶¶ 1-2. *See United States v. Betancourt-Betancourt*, 39 Fed. App'x 483, 486 (9th Cir. 2002) ("Business records are admissible under Federal Rules of Evidence 803(6) if the following foundational facts are proved by a qualified witness: 1) the records were made by a person with knowledge at or near the time of the incident; and 2) the records were kept in the course of a regularly conducted business."); *United States v. Gardley*, No. 2:10-CR-236-GMN-PAL, 2013 WL 4857691, at *1 (D. Nev. Sept. 10, 2013) (same). Likewise, Saticoy Bay's assertion that Mr. Curcio "does not have personal knowledge regarding the deed of trust assigned to Fannie Mae on June 6, 2014," Opp. at 15, is beside the point, as the Court can take judicial notice of that document as a public record. *See* Req. for Judicial Notice at 3 (Dkt. No. 18). In any event, as discussed above, it is undisputed that Fannie Mae owned both the note and deed of trust on the Subject Property when the HOA Sale occurred on August 29, 2014.

Accordingly, there is no disputed issue of material fact and this Court should reject Saticoy Bay's argument that it should be provided time to conduct discovery into the statements made by Mr. Curcio in his declaration.

In any event, Plaintiff's request for discovery regarding the statements made by John Curcio in his declaration or the June 2014 assignment of the deed of trust to Fannie Mae fails to comply with the Federal Rule of Civil Procedure 56(d), which "requires a party to identify by affidavit the *specific facts* that further discovery would reveal, and explain why those facts preclude summary judgment." *Multibank 2009-1 CML-ADC Venture v. McMaster*, No. 2:10-cv-697, 2011 WL 3047487, at *2 (D. Nev. July 25, 2011). Saticoy Bay has neither identified the specific facts that further discovery would reveal nor even submitted the required affidavit.

///
///
///
///
///

## III. CONCLUSION

For the reasons stated above, and in their opening brief, Fannie Mae and FHFA respectfully request that the Court grant their Motion for Summary Judgment.

DATED this 5th day of March, 2015.

**PITE DUNCAN LLP**

By: /s/ *Laurel I. Handley*
Laurel I. Handley, Esq. (SBN 9576)
Krista J. Nielson Esq. (SBN 10698)
520 South 4th Street, Suite 360
Las Vegas, Nevada 89101
Telephone: (858) 750-7600
Fax: (702) 685-6342
*lhandley@piteduncan.com;*
*knielson@piteduncan.com*

Attorneys for Federal National Mortgage Association and Clear Recon Corp.

**FENNEMORE CRAIG, P.C.**

By: /s/ *Leslie Bryan Hart*
Leslie Bryan Hart, Esq. (SBN4932)
John D. Tennert, Esq. (SBN 11728)
300 E. Second St., Suite 1510
Reno, Nevada 89501
Tel: 775-788-2228 Fax: 775-788-2229
*lhart@fclaw.com; jtennert@fclaw.com*

and

**ARNOLD & PORTER LLP**

(Admitted *Pro Hac Vice*)
Asim Varma, Esq.
Howard N. Cayne, Esq.
Michael A.F. Johnson, Esq.
555 12th Street NW
Washington, DC 20004
Tel: (202) 942-5000 Fax: (202) 942-5999
*asim.varma@aporter.com;*
*howard.cayne@aporter.com*
*michael.johnson@aporter.com*

Attorneys for Federal Housing Financing Agency

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b) and Electronic Filing Procedure IV(B), I certify that on the 5th day of March, 2015, a true and correct copy of the **REPLY BRIEF OF FANNIE MAE AND FHFA IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** was transmitted electronically through the Court's e-filing electronic notice system to the attorney(s) associated with this case. If electronic notice is not indicated through the court's e-filing system, then a true and correct paper copy of the foregoing document was delivered via U.S. Mail.

Michael F. Bohn mbohn@bohnlawfirm.com

Ryan D Hastings rhastings@leachjohnson.com

/s/ Pamela Carmon
Pamela Carmon